In the

United States District Court
for the District of Maryland

| | | |
|---|---|---|
| Wu Tien Li-Shou, | ) | |
| Kaohsiung | ) | |
| Republic of China (Taiwan), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |

# Complaint

This is an admiralty and maritime action by Plaintiff Wu Tien Li-Shou for damages for the wrongful death of her late husband, Wu Lai –Yu, Master of his vessel JIN CHUN TSAI 68, the destruction of this fishing vessel owned by Master Wu, loss of income for Plaintiff and her children, the infliction of pain and suffering on Master Wu, the conversion and willful destruction of the Wu fishing vessel and its cargo, and the infliction of emotional distress on Plaintiff Wu and her dependent children.

Jurisdiction

1. This court has jurisdiction over this action under 28 U.S.C. § 1333, 46 U.S.C. 30301 *et seq.*, 46 U.S.C. §§ 30901 *et seq.*, 46 U.S.C. §§31101, *et seq.* and Article II, section 2 of the Constitution of the United States.  The actions complained of herein took place on the high seas so this action is within the admiralty and maritime jurisdiction of this Court.

Venue

2. Venue is properly lodged with this court. See 46 U.S.C. § 31104 and 46 U.S.C. §30906.

Parties

3. Plaintiff Wu Tien Li-Shou is a resident of the Republic of China (Taiwan). She is the lawful wife of Master Wu Lai –Yu and his legal representative. She is also the mother and legal representative of the couple's dependent children, who reside with Plaintiff Wu. She brings this action in each of the foregoing capacities.

4. The defendant United States of America is a sovereign nation.

Background

5. Master Wu was the owner and operator of the 27 meter long fishing vessel JIH CHUN TSAI 68 ("JCT 68"). Master Wu operated the vessel with the crew of some ten sailors plying the Pacific and Indian oceans for fish.

6. In early March 2010 the JCT 68 was taken over by Somali pirates in the Indian Ocean. Thereafter, the pirates lived on the JCT 68.

7. The Somali pirates through an intermediary contacted Plaintiff Wu to discuss release of the vessel and the crew.

8. Many other fishing vessels pirated in the Indian Ocean have been freed successfully without loss of life or loss of the vessel.

Actions Complained of

9. On May 10, 2011 a U.S. Navy vessel the *USS Stephen W. Groves* ("SWG"), a 453 foot vessel with a crew complement of over 200, operating in the Gulf of Aden in support of certain NATO activities approached the JCT 68 on the high seas.

10. The SWG was a public vessel of the United States.

11. The US Navy chain of command maintained control of the SWG operations at all times. The US chain of command through Destroyer Squadron 2 advised SWG against the use of disabling fire with respect to the JCT 68 because of the risk to civilians on board.

12. The SWG initiated contact with the JCT 68. At the time, the SWG enjoyed complete freedom of action with respect to the JCT 68. The SWG was armed with a range of machine guns and canons. At no time did the JCT 68 seek to initiate a threat of piracy to the SWG.

13. On May 9, 2011, the SWG adopted a plan to rescue Master Wu and his crew.

14. Under the plan, the SWG would first give verbal warnings to the JCT 68 and then, as necessary, follow-up with bracketing fire to pacify the pirates aboard. US Navy instructions on engagement of suspected pirate vessels mandated notice of the Navy intentions followed by incremental non –disabling fire. Due consideration of innocents aboard suspected pirate vessels was required to be paramount.  A separate protocol with separate warnings were required before use of disabling fire was authorized and such fire was required to be limited to stern engines, not passenger accommodations.

15. SWG initiated its contact with the JCT 68 at 2:16 in the morning local time. At this time darkness ruled the ocean. The SWG issued verbal warnings via the VHF radio to the JCT 68 in English and Somali, but not Taiwanese, and also flashed lights and blew whistles for several minutes.

16. Then the SWG fired warning shots forward of the JCT 68's bow and gave three additional verbal warnings via VHF radio as before.

17. After SWG positioned itself 1000 yards away from the JCT 68's starboard beam, it fired machine guns in the direction of the JCT 68 intending to strike forward of the vessel and then deliberately walk the fire onto the skiffs resting on the bow of the JCT 68.

18. Rather than striking forward of the JCT 68, some of the fire hit the vessel on the starboard side amidships, well aft of the bow.

19. The SWG did not pause at that point to assess the damage done to the JCT 68 or the reaction of the suspected pirates to the fire.

20. Instead, undeterred by the first firing error, the SWG fired more rounds of machine gun fire on the JCT 68.

21. The SWG then moved to 1400 yards away from the JCT 68. At 3:09 AM the SWG fired more machine gun fire on the JCT 68 purportedly aimed at the skiffs on the vessel's bow. US Navy instructions explicitly forbade disabling fire on the bow of a suspected pirate vessel to avoid injury to innocent victims.

22. At that point the suspected pirates assembled on the ship's bow indicating a willingness to surrender. SWG crew directed the pirates and two unharmed crewman of the JCT 68 to debark the JCT 68 into one of the SWG's skiffs.

23. The SWG's boarding crew boarded the JCT 68 where it discovered four dead, Master Wu as well as three suspected pirates, and two suspected pirates injured from gunfire. The crown of Master Wu's head had been removed by the SWG's gunfire. Uninjured were one suspected pirate and two of the JCT 68 crewmen.

24. After taking Master Wu's remains on the SWG, the next day the SWG crew placed the remains on the JCT 68. After a short burial service, the SWG fired upon the JCT 68 using close in weapon systems sinking the JCT 68 with Master Wu's body on board.

25. The SWG rationalized the decision to sink the JCT 68 as disposition of a hazard to navigation.

26. The SWG fire directly injured Master Wu, the JCT 68, and its cargo.

27. The SWG made no assessment of the seaworthiness of the JCT 68 after the surrender of the pirates. The SWG did not seek or obtain authorization for firing upon Master Wu's remains or the JCT 68.

28. The JCT 68 was, in fact, seaworthy after the surrender of the pirates. At that point the JCT 68 was no longer in possession of pirates so the Navy had no authority to command the JCT 68. The SWG ignored the appeals of the surviving JCT 68 crew members that the vessel be towed back to shore or that they be allowed to navigate the vessel. The decision to sink the JCT 68 was unauthorized and irrational.

29. The SWG later set the suspected pirates free without ever arranging for any trial or other judicial proceedings.

30. Plaintiff Wu did not learn of the events of May 10, 2011 until several days after the incident. In fact, she had continued to seek release of her husband from the pirates under the belief that he was alive and the JCT 68 viable.

31. Plaintiff Wu was deprived of the opportunity to put her husband's remains to rest in a traditional Taiwanese burial, an express wish of Master Wu.

32. A Navy investigation of the incident concluded that the SWG violated a score of specific directives in this action:

    a. the SWG underestimated the difficulty of hitting targets at its chosen range of engagement;

b. the SWG failed to warn the JCT 68 of which portions of the vessel would be targeted with fire in violation of specific rules;

c. the SWG wrongly employed high explosive rounds rather than inert ordinance;

d. the SWG's use of inaccurate manually controlled weapons from 1000 yards or more violated the rules;

e. the SWG grossly misapprehended the spread of close in fire pattern at its chosen range of engagement and the consequent danger to innocents on board;

f. the SWG's use of an anti-aircraft gatling gun against a small vessel was starkly disproportionate;

g. the range of engagement made observation of the JCT 68 difficult, particularly the essential ability to discern people on board;

h. the SWG failed to provide any advance notice to the JCT 68's vessel registry authorities or to the government of the Republic of China (Taiwan) of its aggressive intentions and to learn of the status of any negotiations as to freeing the vessel and Master Wu;

i. the SWG failed to express concern for the risk to people aboard the JCT 68 contrary to Navy rules; and

j. the SWG failed to contact JCT 68's vessel registry authorities and Republic of China (Taiwan) authorities immediately after the engagement to permit salvors or commercial surveyors to recover and preserve the JCT 68.

The report concluded that these violations led to the fatal injury of Master Wu, his crew, and the loss of the vessel.

33. By letter of December 1, 2011 Plaintiff, in her individual and representative capacities, duly filed an administrative claim with the US Department of Navy Office of Judge Advocate General seeking compensation for wrongful death for husband, pain and suffering, the desecration of his remains, the conversion of his vessel, the willful destruction of his vessel, the destruction of the cargo on the vessel, the loss of his society and comfort and other emotional injury. Plaintiff demanded a total of $9 million in compensation. This letter duly satisfied any obligation for exhaustion of administrative claims against the United States.

34. By letter of February 21, 2012 United States Navy rejected the claim.

35. The law of the Republic of China allows United States nationals to recover damages for wrongful death and other damages in its courts under circumstances similar to those of Plaintiff. Accordingly, in addition to the other claims herein, this action may be brought based on the foreign cause of action without abatement of the amount for which recovery is authorized.

First Count (Death on the High Seas Act)

36. Plaintiff repeats and incorporates by reference each and every allegation in paragraphs numbers 1 through 35.

37. United States negligently caused the pain and suffering and death of Master Wu and the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

38. The United States wrongfully caused the pain and suffering and death of Master Wu, the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and

destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

## Second Count (Public Vessel Act)

39. Plaintiff repeats and incorporates by reference each and every allegation in paragraphs numbers 1 through 35.

40. United States negligently caused the pain and suffering and death of Master Wu, the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

## Third Count (General Maritime Law)

41. Plaintiff repeats and incorporates by reference each and every allegation in paragraphs numbers 1 through 35.

42. United States negligently caused the pain and suffering and death of Master Wu, the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

43. The United States wrongfully caused the pain and suffering and death of Master Wu, the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

## Fourth Count (General Maritime Law - Conversion / Trespass)

44. Plaintiff repeats and incorporates by reference each and every allegation in paragraphs numbers 1 through 35.

45. The United States unlawfully converted and trespassed upon the vessel JCT 68 to its own purposes for which it is liable for the value of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below.

### Fifth Count (General Maritime Law - Willful Destruction)

46. Plaintiff repeats and incorporates by reference each and every allegation in paragraphs numbers 1 through 35.

47. The United States willfully destroyed the vessel JCT 68 without authority and in violation of the maritime laws and its orders for which it is liable for the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below.

### Sixth Count (Suits in Admiralty Act)

48. Plaintiff repeats and incorporates by reference each and every allegation in paragraphs numbers 1 through 35.

49. United States negligently caused the pain and suffering and death of Master Wu and the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

50. The United States wrongfully caused the pain and suffering and death of Master Wu, the desecration of his remains, the loss of income, the damage and sinking of the JCT 68 and destruction of Master Wu's fishing enterprise and other Damages set out below for which it is liable.

**Wherefore,** Plaintiff Wu on her own behalf, as representative of the estate of her husband Master Wu, and as legal representative of the couple's dependent children demands payment of the sum of $9 million for: the wrongful death of Master Wu; for his pain and suffering; loss of income for survivors Plaintiff and her dependent children; loss of love, affection, consortium; loss of financial support, care, nurture and guidance; desecration of Master Wu's body; the loss of the vessel JCT 68; the loss of the equipment of the JCT 68; the loss of Master Wu's fishing enterprise; the loss of Master Wu's cargo; and mental anguish and emotional distress of the Wu family and such other injuries and losses as are cognizable in law ("Damages").

Respectfully submitted,

/s/

Timothy B. Shea
Nemirow Hu & Shea
1900 L Street, NW; #303
Washington, DC  20036
Tel.(202) 835-0300
Fax (888) 522 4519
Email  timbshea@aol.com