**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WU TIEN LI-SHOU

v.          Civil No. JFM-13-1366

UNITED STATES OF AMERICA

## AMENDED MEMORANDUM

Wu Tien Li-Shou, the widow of Wu Lai-Yu, has brought this admiralty and maritime action against the United States of America for the wrongful death of her late husband and the destruction of JIN CHUN TSAI 68 ("the JCT 68"), a fishing vessel and its cargo he owned. Wu Lai-Yu was the master of the vessel. Master Yu was a hostage of Somali pirates and was killed from fire emanating from the USS Stephen W. Groves, owned and operated by the United States Navy off the coast of Somalia. After the firing had ceased, members of the crew of the USS Groves boarded and then sank the JCT 68.

The United States has moved to dismiss the complaint asserting that this court lacks jurisdiction under the political question doctrine. The motion will be granted.

In *Baker v. Carr*, 369 U.S. 186, 217 (1962), the Supreme Court articulated six formulations, any one of which indicates a nonjusticiable political question:

(1) A textually demonstrable constitutional commitment of the issue to a coordinated political department; or

(2) A lack of judicially discoverable and manageable standards for resolving it; or

(3) The impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

(4) The impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

(5) An unusual need for unquestioning adherence to a political decision already made; or

(6) The potentiality of embarrassment from multifarious pronouncements by various departments on one question.

The first and perhaps the fourth of these formulations make the political question doctrine applicable here.[1]

At the time of the incident leading to the death of Master Yu and the sinking of the JCT 68, the USS Groves was part of a NATO-led counter-piracy operation whose commander was a Royal Netherlands Navy Commodore. The USS Groves was directed as part of the counter-piracy operation to force the JCT 68 (which had been hijacked by pirates and whose crew members were being held as hostages) to stop and surrender, using force if necessary. In accordance with an approved plan, the USS Groves employed a graduated use of force, including verbal warnings, and then rounds fired to disable the pirates' skiffs stowed on the JCT 68's bow.

After the warning shots were fired, the Commanding Officer of the USS Groves directed a cease fire but the pirates fired back. The USS Groves responded by firing additional shots at the pirates' skiffs on the bow of the JCT 68. After this exchange, the pirates surrendered. When members of the crew of the USS Groves boarded the JCT 68, they found Master Yu in his sleeping quarters amidships with the crown of his head shot off. Three pirates were also found dead forward of the pilot house. Twenty-two pirates were captured, and two hostages were rescued.

It is alleged in the complaint, and for purposes of the pending motion it is assumed to be true, that (1) when the USS Groves fired the shots that killed Master Yu, it positioned itself

---

[1] Moreover, as set forth later in this Memorandum, the acts upon which this law suit is based were taken under a NATO operation. Thus, other *Baker v. Carr* formulations might be invoked.

beyond the firing range of the pirates' weapons, (2) the shots that were fired hit the JCT 68 on the starboard side of the ship, well aft of the bow, and (3) the USS Groves used exploding ordnance rather than inert ordnance as would have been appropriate.

Plaintiff alleges that a Navy investigation of the incident concluded that the USS Groves violated many specific naval directives in the approach that it took and that these violations led to the fatal injury of Master Yu and the loss of his boat.

The conducting of a belligerent operation is entrusted by the Constitution to the executive branch of government, subject to review by the legislative branch of government. Because allowing plaintiff's case to proceed would require this court to review the conducting of such an operation, the political question doctrine makes it nonjusticiable. Cases such as *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215 (1945), *Pacific-Atlantic S.S. Co v. United States*, 175 F.2d 632 (4th Cir. 1949) and *Lind v. United States*, 156 F.2d 231 (2d Cir. 1946) are therefore not on point because the negligence forming the basis for the suits arose from the operation of the vessel owned by the United States, not from an act of belligerency. Likewise inapplicable are prize cases such as *The Paquete Habana*, 175 U.S. 677 (1900) because prize cases are *in rem* actions, not tort suits, over which admiralty courts have traditionally had jurisdiction. Moreover, in *The Paquete Habana* case, the court was not asked to review whether or not an act of belligerency committed by the United States Armed forces was (or was not) negligent.[2]

Plaintiff vigorously contends that even if the firing on the JCT 68 constitutes a political question, the subsequent sinking of the JCT 68 occurred after the cessation of any confrontation

---

[2] *McMellon v. United States*, 387 F.3d 329, 349 (4th Cir. 2004) (en banc), also makes clear that even if this court had subject matter jurisdiction over this action, plaintiff's pursuit of the action would be futile. In *McMellon*, the court held that the "discretionary function" exception to the Federal Tort Claims Act applies to actions brought under the Suits and Admiralty Act. Clearly, the firing and other actions undertaken by the USS Groves constituted the exercise of discretion.

with the pirates and is therefore not covered by the political question doctrine. The United States argues that plaintiff does not have standing to claim damages resulting from the sinking of the JCT 68 because prize act cases upon which plaintiff relies do not apply to this case and because only foreign nations have standing to pursue a claim under the 1958 High Seas Convention. I need not decide these questions because, assuming that plaintiff does have standing to claim damages resulting from the sinking of the JCT 68, the political question doctrine still applies. The Navy sank the JCT 68 under direct orders from the allied commander of the NATO-led operation. Moreover, disobedience of the order would have caused the USS Groves to travel thousands of nautical miles away from the counter-piracy theater, thus reducing the assets available to the operation and substantially interfering with the conducting of the operation.

Plaintiff presents a very sympathetic case. That, however, does not justify this court injecting itself into the dispute in violation of the political question doctrine.

A separate order dismissing this action for lack of subject matter jurisdiction is being entered herewith.


Date: February 4, 2014      \_\_\_/s/_____
                            J. Frederick Motz
                            United States District Judge